McBRIDE, Judge.
After a hearing on the merits of this cause the trial judge rendered judgment in favor of plaintiff, Peter Vujnovich, and against the State of Louisiana, through the Department of Public Works, for $73,200.-00, from which the State has appealed.
Plaintiff is the owner of a wáter bottom lease consisting of 183 acres in Creole Bay, Parish of Jefferson, for the cultivation of oysters, said lease being located about one mile from Barataría Bay Waterway, which had been constructed by the United States Engineers pursuant to Public Law No. 14, 79th Congress of the United States, 59 Stat. 10, and modified and improved for navigation by the United States Engineers pursuant to Public Law No. 500, 85th Congress of the United States, 72 Stat. 297.
The plaintiff brought this action, sounding in tort, against the Department of Public Works, State of Louisiana, alleging that dredging of the channel of the said waterway in 1962 or 1963 and construction of the dykes and other works incidental thereto affected the flow of water in the area causing silt to settle upon and destroy plaintiff’s beds thus rendering them unfit for the commercial propagation, raising and production of oysters. He averred that the increased amount of silt settling upon his oyster beds was occasioned by the negligence of the Department of Public Works, “ * * * personally or through its agent, contractors, or sub-contractors, operators, employees or individual contractors, * -1= *»_
The aforementioned Public Law No. 500 which authorized the modification and improvement of the existing project for the Barataría Bay Waterway, as a condition precedent, required the State of Louisiana, or its local agent, to first agree to: (a) Provide without cost to the United States all lands, easements, rights of way and spoil disposal areas necessary for the construction of the project and for subsequent maintenance, when and as required; (b) Accomplish and maintain without cost to the United States all alterations to pipelines, cables, and any other facilities necessary for the construction of the project; and (c) Hold and save the United States free from damages due to construction and maintenance of the project
*620 The Parish of Jefferson in whose territorial jurisdiction the entire Barataria Bay-Waterway is located, as the local agent, met the above requirements stipulated by said Public Law No. 500; then by authentic act dated March 10, 1960, the State of Louisiana, through its then Governor, Attorney General and Director of Public Works, agreed that the State would provide, without cost to the Parish of Jefferson, all lands, easements, right of way and spoil disposal areas necessary for the construction of the said Federal Project and for the subsequent maintenance thereof; moreover, t'he State of Louisiana agreed that it would save and hold the Parish of Jefferson harmless on account of any liability or claim for damages incurred by said Parish in granting the necessary assurances to the United States Government and arising out of the construction of said waterway over and across state-owned lands and water bottoms.
The State of Louisiana after first filing answer to plaintiff's suit setting up its non-liability,'interposed an exception of no cause of action based on the contention there was no actionable negligence on the part of the State for the reason that it had no control or authority as to the design, the construction or the maintenance of Barataria Bay Waterway. In due course and before trial on the merit, said exception was overruled; thereupon the State sought to invoice the supervisory powers of this court to mandamus the trial court to sustain the exception of no cause of action. We refused a writ with the per curiam that in the absence of a showing of irreparable injury, we will not interfere with orderly proceedings in a trial court, and that relator had a remedy by appeal in the event of an adverse judgment on the merits. See our Docket No. 1957.
On its appeal the State of Louisiana strenuously reurges its exception of no cause of action; however, in view of the fact that the evidence clearly bears out the contention of non-liability in the State of Louisiana on the merits we prefer to-pass upon the merits of the case rather than on the exception, a right which we-have.
That the Barataria Bay Waterway is wholly, solely and only a Federal Project there is no question. The testimony of the Chief Engineer of the State of Louisiana, and that of another expert witness for the State so shows. The plaintiff and one of his witnesses admitted such to be true. The United States Engineers were responsible for the construction of the waterway, the improvements thereto and maintenance thereof. Neither the State of Louisiana nor any of its departments, subdivisions, or agents has or had anything at all to do with the construction or maintenance of the Bar-ataria Bay Waterway except to furnish the assurances above mentioned required by the United States Engineers. The State of Louisiana entered into no other agreements whatsoever respecting the waterway. Thus the plaintiff has failed to prove that any negligence on the part of the State or any of its agents or contractors had one whit to do with the causation of the damages plaintiff claims he sustained and whatever cause of action he has would be against the United States. The judgment is clearly erro- ' neous. Cooper v. City of Bogalusa, 195 La. 1097, 198 So. 510; Vuljan v. Board of Commissioners of Port of New Orleans, La. App., 170 So.2d 910 (cert. denied); Haeuser v. Board of Commissioners of Port of New Orleans, La.App., 170 So.2d 728, and Petrovich v. State of Louisiana, La.App., 181 So.2d 811.
This being an action for damages ex delicto it was necessary that plaintiff secure a legislative waiver of the State’s immunity from suit and from liability, which he did. Act No. 209 of 1964 consented to the institution of the suit which was to be for not more than $73,200.00 against the State of Louisiana, through the Department of Public Works.
*621 It is the contention of plaintiff’s counsel that the instant case should be differentiated from the authorities above cited because the Legislature authorized plaintiff to proceed directly against the State on the indemnity agreements to hold and save the United States free from damages due to the construction and maintenance of the project. The argument follows that whereas plaintiff was so authorized to bring such direct action he is not relegated to an action against the United States.
Counsel says in his brief:
“The Appellee herein realizing that this construction might be construed as a Federal project and knowing that under ordinary circumstances he would have to proceed first against the United States Engineers in the United States Court of Claims, requested the passage of an Act of the Legislature authorizing him to bring his action directly and thereby circumvent the need of first obtaining judgment against the United States Government who in turn would have, under the save harmless agreements, be reimbursed by the Parish of Jefferson who in turn would be reimbursed by the Department of Public Works.”
In Vuljan v. Board of Commissioners of Port of New Orleans supra, we stated:
“Regarding the second contention that the State and its agent (Defendant) are bound by their covenant to hold the United States harmless, the Supreme Court in Cooper v. City of Bogalusa held that the assurance to save the United States harmless was in the nature of an agreement of indemnification and, as such, was distinguishable from a contract of suretyship, defined in LSA-C.C. Article 3035, and did not create a cause of action in Plaintiff, a third person, to sue Defendant for damages to his property resulting from the construction of the project. Accordingly, we must conclude that, under the said ‘save harmless’ assurance, Defendant stands only in the position of agreeing to reimburse the United States the amount which an owner might by judicial determination first recover in damages in an action against the United States.”
Plaintiff had no cause of action against the State on the indemnity agreement. Act No. 209 of 1964 consenting to the filing of this suit was passed under the provisions of the 1960 amendment to Art. 3 § 35, Const.1921. Said article empowers the Legislature to waive the State’s immunity from suit and from liability, and provides that each authorization by the Legislature for a suit against the State becomes effective and valid for all purpose, as of and from the date thereof, as a waiver of the defendant’s immunity both from suit and from liability. The Act in question, even by inference, did not create in favor of plaintiff a cause of action against the State on the hold harmless agreements, and, indeed, if it could be said the Act does so, then the enactment would be fraught with doubts as to its constitutionality. The Constitution does not empower the Legislature to do more than to waive the State’s immunity from suit and from liability. Act 209 of 1964 authorizing the suit against the State does not invest plaintiff with a cause of action he was not possessed of before passage of the Act.
For the reasons above assigned, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that plaintiff’s demands against the appellant be dismissed at his costs in both courts.
Reversed.